UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN M. WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 643 SRW |
| | ) | |
| EILEEN RAMEY,[1] | ) | |
| | ) | |
| Respondent(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Sean M. Williams for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). The State has filed a response. Petitioner filed a reply and two supplements, all of which the Court has considered. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.      BACKGROUND**

In February 2013, a jury convicted Petitioner of Kidnapping, Forcible Sodomy, Forcible Rape, and First-Degree Assault. The Circuit Court of Randolph County sentenced him to 90 years imprisonment. Petitioner appealed to the Missouri Court of Appeals, Western District, who affirmed his convictions. He then filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15. The PCR motion court granted Petitioner's motion finding his counsel was ineffective for informing the jury during voir dire of Petitioner's prior convictions, for failing to provide Petitioner a copy of his recorded statement to police before

---

[1] Jeff Norman, Warden of South Central Correctional Center ("SCCC"), was the original respondent in this matter. Petitioner filed a motion to substitute a party when he was transferred from the SCCC to the Jefferson City Correctional Center ("JCCC"). The Court granted Petitioner's motion, and as warden of the JCCC, Eileen Ramey is now the proper defendant.

1

trial, for failing to move to redact Petitioner's recorded statement to police prior to the State showing it to the jury, and for asking the jury in his opening statement to convict Petitioner of felonious restraint when the jury could not do so because felonious restraint was not a lesser included offense of kidnapping. The appellate court reversed the motion court's decision on the basis that Petitioner's counsel was not ineffective, and Petitioner was not prejudiced by the alleged ineffective assistance of counsel. Petitioner now seeks habeas relief before this Court.

The Missouri Court of Appeals, Eastern District, described the facts of Petitioner's conviction as follows:

> [B]etween February 19 to February 22, 2012, C.A.[2] was staying at a Super 8 Hotel in Moberly, Missouri with a friend, Michael Coleman Wright. Several other people were also staying in the hotel room, including Monique Havice, Jared Calley, and Alex Messer. C.A. testified at trial that she was using methamphetamine and marijuana during the hotel stay. She testified that, on the morning of February 21, 2012, C.A. drove with Wright in Wright's vehicle to a residence where Sean Williams was located. They took Williams back to the hotel room, but at some point Williams left in Wright's car and C.A. and Wright were alone in the room. C.A. testified that, as she was organizing personal items that she had brought to the hotel room from her father's house, Wright "goes crazy." She testified that he started screaming at her, accused her of stealing from him, and put a pillowcase over her head and said she was going to kill her. Wright then telephoned Williams and told him to bring Wright's car back and return to the hotel before he killed C.A. When Williams returned, Williams took a knife out of his pocket, put it to C.A.'s throat, and told her not to cause a scene and to go out to the car. Wright advised her to leave her telephone behind so that she could not call anyone.
>
> When C.A. arrived at the vehicle, Tracy Stodgell was in the front passenger seat and C.A. got into the back seat behind Stodgell. C.A. had known Stodgell for six years as she had met her at a family literacy program and the two had daughters the same age. Wright got into the driver's seat of the vehicle and Williams got into the back seat next to C.A. C.A. testified that when C.A. got in the car, Stodgell immediately began yelling at her and threatening to beat her up. Wright also yelled at C.A. and Williams put the knife back to C.A.'s throat and told her to lean down. Williams told Wright that he would "quarterback this." According to Stodgell's trial testimony, C.A. was crying. C.A. was then driven to an abandoned basement outside of town. Once there, Wright got C.A. out of the car and struck her in the face causing her to fall to the ground. Williams then stood C.A. up and told her to enter the basement structure. Only Williams and C.A. entered the structure at that

---

[2] C.A. is the victim in this case.

2

time. Once inside, Williams tied C.A.'s hands behind her back with an electrical cord. Williams then ordered C.A. to get inside of an old freezer that was located inside the basement. Williams shut the lid and C.A. heard items being placed on top of it. C.A. yelled to get out. Williams re-opened the lid and told her to get out. Williams then told C.A. to comply with his instructions and she would get out alive.

With C.A.'s hands still tied, Williams then forced sexual intercourse upon C.A. and forced C.A. to perform oral sex on him. Thereafter, Williams put a glove in C.A.'s mouth and wrapped tape around her head and mouth. C.A.'s nose remained uncovered. Williams then put C.A. back in the freezer and placed cinder blocks on top of the lid. C.A. testified that, thereafter, the freezer opened again and she observed Williams, Stodgell, and Wright standing outside of the freezer. Stodgell testified that C.A. mentioned Stodgell's daughter's name "because they were – my kids were friends with her little girl," and C.A. appeared "scared to death" and "terrified." Stodgell then punched C.A. repeatedly in the face and spit in C.A.'s face. The freezer lid was closed and a bed frame and cinder blocks were placed on top. Stodgell testified that these items were placed on the freezer to prevent C.A. from getting out. Stodgell testified that the lid was flat after the items were placed on the freezer and she could not see or hear C.A. inside of the freezer.

C.A. testified that she then "passed out" or fell asleep. Upon awakening the following morning, she was able to get the cord around her hands untied. She testified that, in trying to get out of the freezer, "I lifted and I lifted and lifted. I just kept lifting it, and I couldn't get it. C.A. ultimately found something inside the freezer that she was able to wedge under the lid which enabled her to eventually open the lid and climb out of the freezer. She then ran to a home belonging to Carolyn and William Starks, both strangers to C.A. Mr. Starks drove C.A. to C.A.'s father's home. This was approximately 6:00 a.m. on February 22, 2012. C.A. contacted police later that day.

(ECF No. 13-3, at 3-5).[3]

## II. STANDARD

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review

---

[3] These facts are taken directly from the Court of Appeals' Memorandum affirming Petitioner's conviction on direct appeal. This Court presumes a state court's determination of a factual issue is correct. *See* 28 U.S.C. § 2254(e).

of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81

(2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III. DISCUSSION

Between his Petition and supplements to his Petition, Petitioner asserts nine grounds for relief: (1) his Fifth Amendment rights were violated when he was denied counsel during a police interview and when his recorded interview with police was played at trial; (2) the trial court erred in admitting evidence without first establishing a proper chain of custody, allowing contaminated evidence to be admitted, and allowing the State to include facts not in evidence in testimony and closing arguments; (3) his due process rights were violated when the trial court allowed the false testimony of Officer Anthony Bowne; (4) Petitioner's trial counsel was ineffective when he refused to allow Petitioner to view a recording or transcript of Petitioner's interview with police before trial; (5) Petitioner's trial counsel was ineffective when he failed to consult with an expert as to the effects trauma and drugs have on a person's memory to be able to effectively challenge the victim's testimony; (6) Petitioner's trial counsel was ineffective when he failed to assert any defense theory, did not call any witnesses, and failed to meaningfully challenge the State's case; (7) Petitioner's trial counsel was ineffective when he failed to impeach Officer Bowne during the pretrial motion to suppress hearing and expert Ruth Montgomery; (8) Petitioner's trial counsel was ineffective for failing to properly prepare Petitioner to testify; and (9) Petitioner's trial counsel was ineffective when he told the jury panel during voir dire that Petitioner would testify at trial when the decision had not yet been made and Petitioner ultimately did not testify.

### A. Procedurally Defaulted Claims

Petitioner did not raise grounds two, three, and five through nine before the state courts; therefore, these claims are procedurally defaulted and must be dismissed. "[A] state prisoner

5

must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848)).

Petitioner did not raise at all, on direct appeal, in his PCR motions, or on appeal of his PCR motion, his claims regarding the admittance of the false testimony of Officer Bowne (ground three), his attorney's failure to consult an expert as to the effect of drugs and trauma on memory (ground five), his attorney's failure to impeach Officer Bowne at the pre-trial motion to suppress hearing (ground seven), his attorney's failure to prepare him to testify (ground eight), and his attorney telling the jury in voir dire that Petitioner would testify during trial (ground nine). (ECF Nos. 13-1, 16-1, 16-2). In his *pro se* PCR motion, Petitioner did raise his claims regarding the admittance of evidence without establishing a proper chain of custody (ground two), his attorney's failure to put forth a defense theory, call witnesses, or challenge the State's case (ground six), and his attorney's failure to impeach Ruth Montgomery (ground seven). (ECF No. 16-2). However, Petitioner did not include these claims in his amended PCR motion, the PCR motion court did not rule on these claims, and Petitioner did not file any type of appeal challenging the denial of the ruling. (ECF No. 16-2). All of these claims, grounds two, three, and five through nine, did not complete one full round of Missouri's appellate review process; therefore, they are procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. at 845.

A habeas petitioner under § 2254 may avoid procedural default only by showing that there was cause for the default and resulting prejudice, or that a miscarriage of justice will result

from enforcing the procedural default in the petitioner's case. See *Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). In order to establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner states in his reply that he will produce evidence that will show both his trial counsel and PCR counsel were ineffective for not properly preserving his claims for review.

In *Coleman v. Thompson*, the Supreme Court established the general rule that counsel's errors in post-conviction proceedings do not qualify as a cause for default. 501 U.S. 722, 753-75 (1991). In *Martinez v. Ryan*, the Supreme Court recognized a narrow exception to this rule: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or that counsel was ineffective." 556 U.S. 1, 16 (2012). The Supreme Court also noted a petitioner must demonstrate the underlying ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

This narrow exception has been subsequently clarified. The Supreme Court held in *Davila v. Davis* that it does not extend to claims of ineffective assistance of appellate counsel. 137 S. Ct. 2058 (2017); *see* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.") The Eighth Circuit has also determined that *Martinez* "offers no support . . . for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause." *Arnold v. Dormire*, 675 F.3d 1082, 1087

(8th Cir. 2012); *see also Turner v. Cassady*, No. 4:13-CV-2470 ERW NAB, 2015 WL 11216678 (E.D. Mo. Nov. 10, 2015).

Petitioner's threadbare assertion that he will present evidence that his counsel was ineffective is not enough to overcome the procedural default of his claims. To establish cause of his default, Petitioner must establish that his PCR counsel was ineffective for failing to assert his defaulted claims in his PCR motion. To establish his PCR counsel was ineffective, Petitioner must satisfy the *Strickland v. Washington* standard. That is, counsel's performance fell below an objective standard of reasonableness, and he was sufficiently prejudiced by his counsel's performance that "the result of the proceeding would have been different." 466 U.S. 668, 694 (1984). Petitioner has not provided any facts suggesting his PCR counsel's performance was ineffective, or that he was prejudiced as a result. Accordingly, Petitioner has not established cause for his default. His claims asserted in grounds two, three, and five through nine are procedurally defaulted and will be dismissed. The Court will address Petitioner's two remaining grounds for relief on the merits.

**B.     Ground One**

In his first ground for relief, Petitioner raises two arguments. First, he argues the police denied him counsel when he requested it during a custodial interrogation. According to Petitioner, when being interviewed by police, he signed a waiver of his *Miranda* rights but also stated, "I think I need my lawyer." To which the police responded, "no, no, no" and then proceeded with the interview. Petitioner's second argument is that the trial court violated his right against self-incrimination and right to remain silent when it admitted the recording of Petitioner's police interview during which Petitioner's prior bad acts and convictions were

8

mentioned. Petitioner asserts those portions of the recording should have been redacted before being shown to the jury.

### i. Denial of Request for Counsel

In response to Petitioner's first argument, the State asserts the argument is procedurally defaulted because he has not previously asserted on direct appeal or in his PCR that he was refused counsel upon request. However, in his direct appeal brief, Petitioner argued that he was denied his right to counsel because "the officers [] failed to clarify whether [Petitioner] was in fact requesting counsel be appointed," which is sufficiently similar to the claim he now asserts before this Court. (ECF No. 13-1, at 20). Thus, Petitioner's first argument is not procedurally defaulted.

The Missouri Court of Appeals denied Petitioner's appeal on this issue as follows:

> At the hearing on Williams's motion to suppress, the State presented evidence that Williams voluntarily responded to the police department where he was interviewed by plain clothed, unarmed officers. He was advised of his constitutional rights and agreed to speak with officers. Although Williams initially filed a boilerplate motion alleging, among other things, that his interrogation as inherently coercive and that he was subjected to mental and physical duress, threats, promises, and that repeated requests for an attorney were ignored, Williams's only argument after the State presented its evidence on the motion was that Williams made an "equivocal request" for counsel and the officers were required to follow up on that request, which they failed to do. **This "equivocal request" referenced by Williams involved an officer informing Williams of his right to counsel and Williams asking the officer if he would be detained until counsel arrived if he requested counsel. The officer stated that he would. Williams then asked how long that would take and the officer responded, "I don't know."** After this response by the officer, Williams picked up a writing instrument without hesitation and began initialing a form indicating that he understood his rights. Thereafter, Williams spoke with officers and made no further mention of counsel.
>
> . . .
>
> On appeal, Williams acknowledges that the United States Supreme Court in *Davis v. United States*, 512 U.S. 452, 459 (1994), found that questioning of a suspect need not cease "if a suspect makes reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." Williams

> acknowledges that the Supreme Court declined to adopt the rule that he advocates requiring officers to ask clarifying questions when the suspect's statement is ambiguous or equivocal. *Id*. Williams plainly admits in his appeal brief that he "did not make an 'unambiguous' and 'unequivocal' 'request for counsel' but asks this court to ignore *Davis* on the grounds that States have the right to give more protection to a criminal defendant than that granted by the United States Constitution.
>
> Even if we were to conclude that these statements evidence an expression of equivocation with regard to Williams desiring an attorney, which we will not presume, Williams ignores that Missouri's own high court has post-*Davis* jurisprudence also requiring an unambiguous, unequivocal request for counsel under the Fifth Amendment that this court is not free to disregard. *See State v. Bucklew*, 973 S.W.2d 83, 91 (Mo. Banc. 1998). "The Court of Appeals is constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri." *State v. Brightman*, 388 S.W.3d 192, 199 (Mo. App. 2012) (internal quotations and citations omitted). Point two is denied.

(ECF No. 13-3, at 11-13) (emphasis added).

The state court's decision is entitled to deference as it is not an unreasonable application of clearly established federal law, and this Court finds no basis for discounting the state court's findings. In his second supplement, Petitioner cites to several cases in an attempt to undermine the appellate court's ruling, but the only Supreme Court case Petitioner cites does not hold that a police officer must clarify an equivocal or ambiguous request for counsel. *See Rhode Island v. Innis*, 446 U.S. 291 (1980) ("The issue in this case is whether the respondent was "interrogated" in violation of the standards promulgated in the *Miranda* opinion.") The remainder of the cases Petitioner cites are either state court cases or federal appellate cases, but the standard for habeas relief requires the state court to have unreasonably applied clearly established federal law as determined by the Supreme Court of the United States, not a state court or federal appellate court. 28 U.S.C. § 2254(d)(1).

Petitioner's brief reference to an attorney was ambiguous and equivocal. The officer's questioning did not violate Petitioner's rights under the Fifth Amendment. Nor does the Court find Petitioner was threatened, tricked or cajoled in a manner which violated his rights under the

10

Constitution. The state appellate court's opinion is entitled to deference, and the Court denies Petitioner's first argument of his first ground on this basis.

### ii. Admittance of Police Interview

In his first ground for relief, Petitioner also argues the trial court erred in admitting the recording of his police interview which violated his right against self-incrimination and right to remain silent. According to Petitioner, the recording included Petitioner discussing prior bad acts including his prior convictions, a positive drug screen, and that he was on probation at the time of the offense. Petitioner asserts the trial court should have redacted this portion of the recording before playing it to the jury. However, neither Petitioner nor his counsel requested the trial court to redact the recorded statement.

Petitioner has not raised this exact claim before on direct appeal or in his PCR motions. In his amended PCR motion, he did assert his trial counsel was ineffective for failing to move to redact the recording. (ECF 16-2, at 25). However, "a federal habeas petitioner's claims must rely on the same factual and legal bases relied on in state court." *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006) (quoting *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006)). Because Petitioner's claim before this Court is not the same as his claim before the state court, his claim is procedurally defaulted. *Id*. However, out of an abundance of caution, the Court will address Petitioner's claim on the merits.

The PCR motion court initially granted Petitioner's ineffective assistance of counsel claim on this issue, finding as follows:

> This Court concludes that a reasonably competent attorney representing Movant under these circumstances would have moved to redact Movant's recorded statement to police by omitting or fast-forwarding through two minutes of the conversation wherein Movant discuses that he is currently on probation, that he has prior criminal convictions for assault and robbery, and that he did [6.5] years in prison for those offenses. Counsel's stated strategy for not doing so was not

11

> reasonable. Counsel indicated in the trial transcript that he had discussions with the prosecutor about the content of the statement at the start of trial and had ample opportunity to make a motion to redact the statement. The prosecutor had already made the decision to stop and fast forward the recording at various points while it was being played for the jury – such that an additional stop at 16:12:05 and restart at 16:14:18 could have been easily accomplished and would have appeared to have been a decision made by the prosecutor and not the defense, thus avoiding counsel's concern that he would "create the impression that we were attempting to hide some type of evidence from them". Counsel's conclusion that there would be "no prejudicial effect for that information to be disclosed to the jury" in the recorded statement because he had already disclosed Movant's convictions during voir dire only meant that in counsel's opinion there was no additional prejudice occurring as a result in the statements in the recording because counsel had already prejudiced Movant in a similar way via his statements made during voir dire. Two wrongs do not make a right here. Furthermore, Movant's recorded statement contained more details about prior bad acts than what Mr. Legg had already disclosed during voir dire. Movant was unnecessarily prejudiced by his own attorney during this trial. Movant was denied his right to effective assistance of counsel and due process of law when trial counsel failed to move to redact Movant's recorded statement that was played for the jury. Had defense counsel done so, a reasonable probability exists that the outcome of Movant's trial would have been different.

(ECF No. 16-2, at 49-50). The State appealed the PCR motion court's order, and the Missouri Court of Appeals, Western District, reversed, finding as follows:

> The testimony at the evidentiary hearing established that Williams's trial counsel consistently advised Williams, including after receiving and reviewing the recorded statement, that he should rely on his recorded statement and not testify in order to avoid placing his prior convictions before the jury. Williams's choice to not immediately heed this advice required his counsel to implement a strategy that would minimize the prejudicial effect of Williams's prior convictions in the event that he did testify. Accordingly, trial counsel made reasonable decisions to (1) reference Williams's prior convictions during *voir dire* to inoculate the jury to his criminal past and to remove for cause members of the jury panel who indicated that they would hold his prior conduct against him at trial and (2) not move to redact certain references contained in the recorded statement. *See, e.g., Woods v. State*, 771 S.W.2d 926, 927 (Mo. App. E.D. 1989) (Trial counsel's decision to conduct *voir dire* on prior convictions at a time when defendant expected to testify "did not fall below an objective standard of reasonableness at the time." (citing *Strickland*, 466 U.S. at 688)). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions[,]" *Strickland*, 466 U.S. at 691, and "[s]trategic choices . . . are virtually unchallengeable." *See McLaughlin*, 378 S.W.3d at 337; *Williams*, 490 S.W.3d at 403.
>
> Additionally, the strategy employed by trial counsel triggered no complaint from Williams at trial. During a colloquy with the trial court conducted after he had

12

> decided that he would not testify, Williams confirmed that he had been leaning toward testifying but that he had changed his mind after watching the recorded statement played at trial. His counsel explained to the trial court that he and Williams had discussed that the videotaped statement referenced that he had previously been in prison, was on probation, and had dropped dirty, which he would have moved to redact if Williams had not planned on testifying. However, because Williams had been consistent in his desire to testify and trial counsel had addressed his prior convictions during *voir dire*, he decided that playing the recorded statement in his entirety was preferable to having the recording edited and creating the impression that Williams was attempting to hide information from the jury. Williams agreed that *they had discussed this strategy*, and that he felt he had been effectively represented by his trial counsel, *that trial counsel did everything that Williams had asked*, that trial counsel did not do anything over Williams's objection, and that he was satisfied with the services of his trial counsel.
>
> . . .
>
> We are hesitant to conclude that trial counsel's conduct was unreasonable where his actions were based on Williams's consistently expressed desire to testify (against counsel's advice) and where Williams's contemporaneous actions are inconsistent with his presently argued position. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

(ECF No. 13-6, at 11-13 (emphasis in original)). The appellate court also concluded that Williams failed to satisfy the prejudice prong of *Strickland* because considering the totality of the evidence against Williams, he had not shown a reasonable probability the jury verdict would have been different absent the alleged errors. (ECF No. 13-6, at 15-18).

The state appellate court's decision is entitled to deference as it is not an unreasonable application of clearly established federal law. This Court finds no basis for discounting the state appellate court's findings. Furthermore, even when considering the claim as a trial court error rather than as an ineffective assistance of counsel claim, Petitioner's claim still fails. With limited exceptions, "admissibility of evidence at a state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief[.]" *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994). "Thus, on habeas review of a state conviction, a federal court does not examine whether evidence was properly admitted under state law." *Tokar v. Bowersox*, 1 F. Supp. 2d 986,

1004 (E.D. Mo. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)). Rather, review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. A federal court will reverse a state court evidentiary ruling "only if it 'infringes upon a specific constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process.'" *Maynard v. Lockhart*, 981 F.2d 981, 986 (8th Cir.1992) (quoting *Berrisford v. Wood*, 826 F.2d 747, 749 (8th Cir.1987)).

Neither Petitioner nor his trial counsel requested the trial court to redact any portion of his recorded statement. The record does not show the trial court violated Petitioner's constitutional rights by the admission of his unredacted recorded statement. The Court denies Petitioner's Petition on this ground.

    **C.**    **Ground Four**

In ground four of his Petition, Petitioner asserts his counsel was ineffective for not providing him with a copy of his recorded police interview prior to its introduction at trial. Petitioner raised this claim in his amended PCR motion. (ECF No. 16-2, at 25). The PCR motion court initially granted Petitioner's motion on this claim, finding as follows:

> This Court concludes that a reasonably competent attorney representing Movant under these circumstances would have shown Movant a copy of his recorded statement to police [], or at least provided him with a transcript of that statement, before his jury trial began. Counsel received a copy of the recorded statement three weeks before trial, allowing sufficient time for that discovery item to be shown to Movant. As a result of counsel's failure to show Movant his recorded statement before trial, Movant was unable to make a firm decision as to whether or not to testify at trial, which led to counsel's poor decision to unnecessarily inform the venire panel of Movant's prior convictions. Had Movant seen the recording before trial, he indicated that he would have decided not to testify, which is supported by what actually occurred at trial after Movant first viewed the recording along with the jury. Movant was denied his right to effective assistance of counsel and due process of law when trial counsel unreasonably and prejudicially failed to show Movant a copy of his recorded statement to police before trial. Had defense counsel

14

> shown Movant the recording before trial, a reasonable probability exists that Movant would have decided before trial not to testify, which would have led counsel to decide against informing the jury about Movant's prior convictions, resulting in a reasonable probability that the outcome of Movant's trial would have been different.

(ECF No. 16-2, at 46-47). The State appealed the PCR motion court's order and the Missouri Court of Appeals, Western District, reversed, finding as follows:

> In the present case, trial counsel reviewed a summary of the interview prepared by police with Williams prior to receiving the actual recording from the State, and Williams pointed out several statements within the summary that he did not believe were accurate. Although a comparison of the summary to the recording reveals no inaccuracies, the summary did not include references to Williams's statements that he "just dropped dirty" and could not afford to be in situations like this because he was "already walking on eggshells." The summary also did not reference Williams's statements that he had past convictions for assault and robbery and had spent six and a half years in prison for those offenses.
>
> . . .
>
> The record reveals that it was not until after Williams was found guilty and sentenced that he began to complain that his trial counsel had ignored his requests to review the videotaped statement prior to trail and that his alleged failure had significantly impacted his decision-making. This complaint is directly contrary to his statements to the trial court during the above-referenced colloquy and is inconsistent with his actions prior to trial. As an example, notwithstanding his testimony at the evidentiary hearing of his repeated requests to view the videotaped statement and contrary to his present position, he curiously waived his right to appear at the suppression hearing regarding the recorded statement because he preferred to be returned to the department of corrections rather than remain at the local jail. Williams only appeared at the suppression hearing because his counsel insisted that he be brought to the courtroom after learning that Williams had not yet been transferred and was still being held in the nearby county jail. And despite being present at a hearing that was focused on the specific piece of evidence that he now claims he was demanding to view and was critical to his decision whether to testify, Williams did not seek to have the recording played at the suppression hearing and the record is silent to any other effort by him at that time to view the recorded statement.
>
> We are hesitant to conclude that trial counsel's conduct was unreasonable where his actions were based on Williams's consistently expressed desire to testify (against counsel's advice) and where Williams's contemporaneous actions are inconsistent with his presently argued position. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

15

(ECF No. 13-6, at 12-13). The appellate court also concluded Williams failed to satisfy the prejudice prong of *Strickland* because considering the totality of the evidence against Williams, he had not shown a reasonable probability the jury verdict would have been different absent the alleged errors. (ECF No. 13-6, at 15-18).

In addition to the facts noted by the appellate court, the record clearly shows trial counsel began discussing Petitioner's recorded statement with him as early as June 29, 2012, using the officer's written summary of the interview. (ECF No. 16-4, at 41-50). Trial counsel wrote a letter to Petitioner on February 5, 2013, which stated he received the recorded statement. (ECF. No. 16-4, at 17-18).

On Friday February 8, 2013, Petitioner was brought to the hearing on his motion to suppress the recorded statement. The parties were in possession of copies of the recorded statement and discussed whether to play the recording at that time or allow the trial court to review the recorded statement later. (ECF. No. 16-3, at 29). Petitioner said nothing. The attorneys and the trial court also discussed any last-minute developments in the case prior to first day of trial on Monday, February 25. Petitioner's trial counsel advised the court he would be unavailable from February 9 through the 20 and would back in the office by Thursday February 21. *Id.* at 30-31. Again, Petitioner said nothing about wanting to view the recorded statement. On Saturday February 23, trial counsel again met with Petitioner to discuss his recorded statement and the trial. Trial counsel noted Petitioner wanted to testify at the trial. At the PCR hearing Petitioner testified he was 70-75% sure he would testify at the trial. (ECF. No. 16-4 at 86).

On Monday, February 25, the trial began. Petitioner had not viewed the recorded statement, but he again said nothing. On February 26 the trial court denied the motion to suppress and would be admitting the recorded statement at trial. The trial continued on February

27 and 28. On February 28, the recording was played at trial. During the following lunch break, Petitioner advised trial counsel he had changed his mind and did not want to testify. When questioned by the trial court on this decision and on the services of trial counsel, Petitioner made no complaints. Petitioner advised the court that he and trial counsel were "on the same page." (ECF No. 16-3, at 227-28). As the appellate court noted, Petitioner "felt he had been effectively represented by his trial counsel, *that trial counsel did everything that Williams had asked*, that trial counsel did not do anything over Williams's objection, and that he was satisfied with the services of his trial counsel." (ECF No. 13-6, at 12) (emphasis in original). Only after being convicted at trial and sentenced to 90 years in prison, did Petitioner complain to the court about not reviewing the recording before the start of the trial.

      The appellate court's decision is entitled to deference as it is not an unreasonable application of clearly established federal law. This Court finds no basis for discounting the appellate court's findings. The Court denies ground four of Petitioner's Petition.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Sean M. Williams for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that the Petition is **DISMISSED, with prejudice**. Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. 28 § U.S.C. 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

So Ordered this 16th day of October, 2020.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**